FILED
MAR 1 1 2022
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JESSICA V.,                                              20-CV-01585-MJR

                        Plaintiff,                       DECISION AND ORDER

        -v-

COMMISSIONER OF SOCIAL SECURITY,


                        Defendant.
_____

        Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States

Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 14)

        Plaintiff Jessica V.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social

Security ("Commissioner" or "defendant") denying her application for Disability Insurance

Benefits ("DIB") pursuant to the Social Security Act (the "Act").  Both parties have moved

for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.  For the following reasons, Plaintiff's motion (Dkt. No. 12) is granted,

defendant's motion (Dkt. No. 13) is denied, and the case is remanded for further

administrative proceedings.

_____

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name
and last initial.

## BACKGROUND[2]

Plaintiff filed for DIB on January 11, 2018, alleging a disability onset date of December 3, 2015. (Administrative Transcript ["Tr."] 163-76, 191). The application was initially denied on May 28, 2019. (Tr. 82-92). On November 4, 2019, Plaintiff amended her alleged onset date from December 3, 2015, to May 20, 2017. (Tr. 267-68). Plaintiff timely filed a request for an administrative hearing. (Tr. 93-94). On November 12, 2019, Administrative Law Judge ("ALJ") David Neumann held a video hearing from Albany, New York. (Tr. 33-61). Plaintiff appeared in Buffalo, New York with her attorney. A vocational expert also appeared and testified at the hearing. The ALJ issued an unfavorable decision on December 2, 2019. (Tr. 20-28). On August 28, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). This action followed.

## DISCUSSION

I.     *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v.*

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The

Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he

or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.*

§§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 20, 2017, the amended alleged onset date.  (Tr. 22).  At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar spine disc herniation; cervical spine disc protrusion; status-post right shoulder arthroscopic surgery; degenerative joint disease of the bilateral knees; migraine headaches; and obesity. (Tr. 23).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23).  Prior to proceeding to step four, the ALJ found that Plaintiff had the RFC to perform sedentary work in that that Plaintiff could stand and walk for two hours total in an eight-hour workday with normal breaks; could sit for six hours total in an eight-hour workday with normal breaks; could lift, carry, push, and pull ten pounds frequently and twenty pounds occasionally. The ALJ also found that Plaintiff could only occasionally reach overhead with the upper extremities, must avoid exposure to concentrated vibrations, could never work in an environment with

excessive noise above 70 decibels, (the noise level of a typical vacuum cleaner), and could never work with exposure to bright flashing lights. (Tr. 23-26). At step four, the ALJ found that Plaintiff could not perform her past relevant work. (Tr. 26). At step five, relying on vocational expert (VE) testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform (Addresser, DOT No.209.587-010 and Surveillance System Monitor, DOT No. 379.367-010). (Tr. 26-27). Accordingly, the ALJ determined that Plaintiff has not been under a disability from May 20, 2017, through the date of his decision. (Tr.27).

IV.   *Plaintiff's Challenge*

Plaintiff argues, *inter alia*, that the ALJ's finding at step five, that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, is not supported by substantial evidence as it is inconsistent with the physical limitations that he assigned Plaintiff in his RFC determination, and that the case must therefore be remanded. The Court agrees.

The ALJ ultimately found Plaintiff was not disabled because she could perform work in the national economy as a Surveillance System Monitor (with 8,452 jobs in the United States) or an Addresser (with 3,002 jobs nationally). (Tr. 27). These jobs, however, were insufficient to discharge the Defendant's limited duty to show that there are jobs that exist in significant numbers that the disability claimant can perform. *See* 20 C.F.R. § 404.1512(b)(3) ("In order to determine under § 404.1520(g) that you are able to adjust to other work, we must provide evidence about the existence of work in the national economy that you can do (*see* §§ 404.1560 through 404.1569a), given your residual

functional capacity (which we have already assessed, as described in § 404.1520(e)), age, education, and work experience.").

The ALJ erred by failing to resolve conflicts between the testimony of the Vocational Expert and *The Dictionary of Occupational Titles* (DOT) before determining that Plaintiff could perform work in the national economy as an Addresser. Social Security Ruling 00-4p. More specifically, the ALJ failed to identify or explain the discrepancy between the frequent reaching requirements of an Addresser and the reaching limitations he included in the RFC. (Tr. 23, 27). The DOT identifies the job of Addresser under code 209.587-010. The DOT and its companion publication, *Selected Characteristics of Occupations* (SCO), are the primary resources used by the defendant and its vocational experts to identify the exertional and non-exertional requirements of occupations. SSR 00-4p. These publications specify that an Addresser must be able to perform reaching on a frequent basis, or up to 2/3 of an 8-hour workday. *Ibid.*

The ALJ, however, restricted Plaintiff in her RFC to performing only occasional overhead reaching with her upper extremities. (Tr. 23). Without further guidance from the ALJ in his decision (and there is none), this RFC finding conflicts with his later determination that Plaintiff could perform work in the national economy as an Addresser. (Tr. 27). This was reversible error. *See Lockwood v. Comm'r of SSA*, No. 17-2591-cv, 2019 U.S. App. LEXIS 2104, at *12 (2d Cir. Jan. 23, 2019). Defendant appears to admit that this was error. (Dkt. No. 13-1, at 14-15).

With regards to Surveillance Systems Monitor (8,452 jobs nationally), the Court finds that there is not substantial evidence that such work exists "in significant numbers" in the national economy.

A limited burden of proof shifts to Defendant at step five of the sequential evaluation, to show that there is "other work that exists in significant numbers in the national economy that the claimant can do given the residual functional capacity, age, education, and work experience." 20 C.F.R. § 404.1560(c) ("We will look at your ability to adjust to other work by considering your residual functional capacity and the vocational factors of age, education, and work experience, as appropriate in your case. . . Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country").

Although the Social Security regulations and rulings fail to define a "significant number of jobs," guidance can be gained by looking to numbers that were found not to be significant in other cases. *Crossman v. Comm'r of Soc. Sec.*, No. 3:14-CV-1294 (ATB), 2015 U.S. Dist. LEXIS 138959, at *45-53 (N.D.N.Y. Oct. 13, 2015) (holding that 261 jobs were not significant).

In *Leonard v. Heckler*, 582 F. Supp. 389, 391 (M.D. Pa. 1983), the court held that 4,000 to 5,000 jobs nationwide were not significant, given that it was "a minuscule fraction of the number of jobs existing in the national economy."

In *Peach v. Berryhill*, No. 1:17-CV-00201-MAT, 2018 U.S. Dist. LEXIS 148339, at *9 (W.D.N.Y. Aug. 30, 2018), this Court concluded that 8,991 positions nationally did not qualify as a significant number of jobs.  *See also Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp.3d 223, 231 (N.D.N.Y. 2015) (finding a total of 13 positions regionally and a total of 5,160 positions nationally was not sufficient evidence to show the claimant could perform other work in the national economy); *Franklin v. Apfel*, 8 F. Supp.2d 227 (W.D.N.Y. 1998) (expressing skepticism whether 480 regional jobs and approximately

80,000 jobs nationally were sufficiently significant); *Gray v. Colvin*, No. 12-CV-6485L, 2014 U.S. Dist. LEXIS 115451, 2014 WL 4146880, at *6, (W.D.N.Y. Aug. 19, 2014) ("[T]he Court is troubled by the low number of nationally and regionally available [positions] [16,000 and 60 positions, respectively described by the VE."); *Robinson v. Astrue*, No. 08-CV-4747(RJD), 2009 U.S. Dist. LEXIS 114941, 2009 WL 4722256, at *2 (E.D.N.Y. Dec. 9, 2009) (questioning whether 200 jobs locally and 3,000 jobs nationally qualified as "significant"); *see also Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) ("the ALJ's finding that 25,000 national jobs is sufficient presents a close call").

The Court orders that the case be remanded for further proceedings rather than for payment of benefits to allow: (1) the ALJ to explain, if possible, the apparent discrepancy between the overhead-reaching limitation in his RFC determination and the overhead-reaching requirements of the Addresser job; and (2) the ALJ to reconsider step five of the sequential evaluation process. [3]

---

[3] Plaintiff also argues that the ALJ erred by failing to evaluate properly the medical opinions in the record. The defendant should also address this issue on remand.

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is granted, defendant's motion for judgment on the pleadings (Dkt. No. 13) is denied, and the case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:     March 9, 2022
           Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge